Good morning, may it please the Court, my name is David Schlesinger and I represent the appellant Euphemia Ramirez. Ms. Ramirez is a 71-year-old U.S. citizen who for more than 40 years served with great distinction as a distinguished healthcare professional in Southern California. She is a registered nurse, she held various positions at hospitals, etc. In April of 1998, Ms. Ramirez was arrested in Mexico on suspicion of having violated Article 138 of the Mexican Federal Criminal Code, a statute which carries a mandatory minimum of six years and a potential maximum of 12 years. The Mexican government immediately released her, though, three days later because it could not complete necessary documentation that would be required to detain her. Thereafter, Ms. Ramirez went home to the United States and then the Mexican government delayed more than seven years until November 23, 2005 before submitting a formal diplomatic note to the United States State Department to request Ms. Ramirez's extradition. As a result of this delay, the humanitarian exception to the standard rule of non-inquiry that applies in extradition proceedings is invoked for several reasons. First, because Ms. Ramirez, as a result of this delay, is presumably going to be unable to subpoena necessary witnesses, including the nurses she was accused of illegally trafficking in Mexico. Additionally, several other witnesses, including her alleged co-conspirators, are presumably going to be unavailable as well. As a consequence of the delay, the evidence is going to be stale in this case, so there are going to be several attendant problems associated with Ms. Ramirez receiving a fair trial in Mexico as a result of that. Additionally, the punishment... Were all these issues brought to the attention of the State Department? I am not aware, Your Honor, as to whether the State Department has been sufficiently briefed as to these issues. Is it premature to take it to the State Department? If this Court denies relief, I assume that you will make these pleas before the Secretary of State. That is correct, Your Honor. There is some indication in the government's opposition brief that the State Department may have already issued a surrender warrant for Ms. Ramirez, so there is at least some preliminary indication that the State Department may have made these determinations, and those occurred before I was retained as appellate counsel. I would, of course, along with other attorneys, be prepared to make arguments to the State Department if... What authority do we have to counterman the Secretary of State's judgment about our obligations to extradite Ms. Ramirez? Well, Your Honor, I should note that we don't know whether arguments were actually made on her behalf. It's possible that the State Department examined the record, but there was no adversarial process... Well, the State Department must have been involved at some point because they had to issue... That's correct. And then when the State Department authorizes the U.S. Attorney to go ahead and begin extradition proceedings, that's how it starts. Somebody someplace in the Secretary of State's office made a determination that extradition appeared warranted. Well, that's correct, Your Honor. Initially, the State Department directed the U.S. Attorney to seek, after Mexico requested, a provisional arrest of Ms. Ramirez, which it did in April of 2006. And the extradition court, which in district court is a magistrate judge, has very limited authority. That is generally correct, Your Honor. The Ninth Circuit, though, this court and various other circuit courts, courts of appeals, have recognized the humanitarian exception to the rule of non-inquiry. It's applicable in very narrow circumstances. Has anybody ever granted it? Not to my knowledge, Your Honor. It's only been recognized as a theoretical possibility. That's correct, Your Honor. We believe that we have presented specific facts in this case regarding both Ms. Ramirez's potentially incommensurate punishment and the harsh procedures that would be occasioned because of the Mexican government's delay in seeking the extradition here. Let me go back to the line of question that Judge Pison and I started with. If the Secretary of State has already examined, had an opportunity to examine the equities of her extradition and made that determination against her, what authority does this court have to countermand the Secretary of State's determination when there's no statutory authority for that whatsoever? Secondly, if the Secretary of State hasn't made that determination, or assuming that you will renew all of these objections to the Secretary of State if this court were to deny relief, then isn't this court's actions premature? In response to your first question, Your Honor, I believe that in the First Circuit's decision in Kinhong, which has been cited in both our briefs and the government's brief, the First Circuit seemed to suggest that the humanitarian exception to the rule of non-inquiry has some sort of constitutional provenance. The First Circuit invoked Justice Frankfurter's famous, or it seemed to at least reference Justice Frankfurter's famous words in Rochin v. California that governmental conduct which shocks the conscience could, then hearkening back to the Second Circuit's decision in Galena, so fundamentally offend this court's sense of decency as to create an exception to the rule of non-inquiry. So I think that there is a constitutional basis, perhaps a substantive due process basis, to suggest that this court has the authority to, even if the Secretary of State has already examined this case, examined some of the equities, to direct the Secretary of State to quash the extradition process. If you could perhaps repeat your second question. My second question is if the Secretary of State hasn't made that inquiry, then isn't this court's judgment premature? Isn't your remedy to go and press this before the State Department in a very formal way and force the Secretary of State to make a judgment about it? It's possible, Your Honor, that the State Department, and perhaps Mr. Green on behalf of the government can clarify this, it's possible that the State Department might not even entertain our arguments at this point, given the surrender warrant is already issued. It appears as though these arguments may have been made before the State Department issued the surrender warrant. Well, Your Honor, they certainly weren't made by an attorney, because I was retained by Ms. Ramiro's on the very... Maybe we can ask them to reconsider. We'll certainly try to do that, but if this court affirms the district court's denial of Ms. Ramiro's habeas petition and the mandate issues, there's nothing to stop the State Department, given this apparent issuance of the surrender warrant, to immediately surrender her to Mexico. So there's no guarantee that the State Department will even entertain our arguments. If we make them, of course we'd like to. Would you like to save some time for rebuttal? If this court doesn't have any further questions, I'd be... I do have one question. Certainly, Your Honor. I don't want to afford you additional time if I chew up all your time. The other question is, if the extradition proceeds, and she goes to Mexico, and things turn out badly for her, not only in the result, but let's suppose that she can't get a hold of the witnesses, and she can't get a hold of the co-conspirators, and Mexico goes ahead and sentences her in a way that we might find would violate our due process norms. Is there any recourse that... Is there any way that the United States has of protecting its citizens against that kind of due process violation post hoc? I know that the State Department, Your Honor, sometimes conditions extraditions based on certain guarantees, such as a guaranteed trial procedure, guaranteed procedural mechanisms. So, of course, the State Department could, before the trial, make those conditions, try to seek those conditions from the Mexican government. I don't know whether post-trial, Your Honor, the State Department would have any recourse with regard to trial procedures that have already taken place. Thank you. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honor. It's Joseph Green on behalf of the United States. I'm prepared to submit on the briefs that the government filed. I believe that all the arguments have been addressed. I would just clarify one... Can you enlighten us a bit? What proceedings have taken place before the Secretary of State, just so we make sure we understand? The information that I have on that, Your Honor, is that on July 31, 2007, the Secretary of State did issue the surrender warrant. I don't know what, if any, this information was before her, but what I can tell you, Your Honor, is that the certificate of extraditability would have been referred to the Secretary of State. So that's the only documentary evidence that I can, with some certainty, tell you that she would have... Was she represented before? Was there any legal... Did she have legal counsel or representation before the Secretary of State issued this? Yes, Your Honor. She had representation in front of Judge Porter. Her attorney's name was Gerald Wasson. And Mr. Wasson also represented her in connection of the filing of her habeas petition, which was heard by Judge Houston. Well, let me ask you this. When the State Department is contemplating a request from a foreign country to extradite a U.S. citizen, do they notify the subject of the extradition request ahead of time that they're contemplating? To my knowledge, the first notice that Ms. Ramirez would have received would have been when she was arrested. So when she was arrested... So the State Department gets the request. They evaluate it. That's correct. They decide whether it fits within the treaties, the extradition treaties. Yes, Your Honor. Diplomatic considerations, I guess. And then they say, okay, we're going to start extradition proceedings. Exactly. And they tell the U.S. attorney to go ahead and start. Precisely. And that's what happened in this case. The U.S. Attorney's Office then obtained a provisional arrest warrant. They arrested Ms. Ramirez, I believe within 60 days. They then filed a completed extradition packet. That then is before the magistrate judge, in this case Judge Porter. Now, before she's actually removed to Mexico or transported or allowed to be turned over to Mexican authorities, does she have an opportunity to go back before the Secretary of State and say, you know, is just failing so critically that I'd like, you know, reconsider this extradition? That's exactly the government's position, Your Honor. And while I can't tell you what the specific procedure is here today, the government's position on extraditions is that it's the role of the Secretary of State to take into account those discretionary facts that might require the Secretary to exercise her discretion not to extradite somebody because it is a discretionary act of the Secretary of State. So what the particular procedure is, I'm not aware of what that is here this morning, but that's entirely within her discretion. So the court's role – I gather here what she said was that her health seems to be – you know, she makes statements that her health is deteriorating. That's correct, Your Honor. And I would – to take a step back from the issue about what's been presented to the Secretary of State, I would note that the kind of conditions that she's claiming the government would submit, they're typical of someone who's senior in years, and they're no different than conditions that someone might suffer in our prison system, in our jail system. So none of them, even if the court were determined that it had the power to review it or second-guess the Secretary of State's decision, if you accept them all as true, none of them should compel the court to intercede in the extradition in Ms. Ramirez's case. Counsel, does the government concede the existence of a humanitarian exception? No, Your Honor. The government's position is that there is no humanitarian exception, that, as I was discussing earlier, that the discretionary portion rests with the Secretary of State. So that's – we recognize that the Ninth Circuit has considered it a number of times. We note that it's never been applied. The facts here certainly don't give rise to the creation of one, even if the court took the view that it did have the power to create such an exception. But directly to answer your question, the government's position is that the court doesn't have that power. With that, I'm prepared to submit, Your Honors. Anything further? Let me briefly, Judge Bybee and Judge Pius and Judge Nelson, point you to some cases that discuss the first principles regarding the constitutional provenance of the humanitarian exception. I've already discussed Kin Hong. My research subsequently has recognized that the Seventh Circuit, in a case called Burt, Matter of Burt, 737 F. 2nd, 1477, 1984 case, also discussed the notion of the sense of fairness, fair play occasioned by the – or required by the Due Process Clause as giving rise to rule of – exception to the rule of non-inquiry. And the Fourth Circuit earlier this year in Miranesco v. Kostner, 480 F. 3rd, 664, also discussed some of the first principles relating to the rule of non-inquiry. If there are no further questions from the panel, I think that concludes my remarks. Thank you, Your Honor. We appreciate your arguments. The matter will be submitted. See, our next case for argument is United States of America v. Humberto Mora Angel. Thank you.
judges: Nelson, Paez, Bybee